**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HERBERT SILVERBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KEMET CORPORATION; FRANK G. BRANDENBERG; WILFRIED BACKES; GURMINDER S. BEDI; JACOB KOTZUBEI; WILLIAM M. LOWE, JR.; E. ERWIN MADDREY, II; YASUKO MATSUMOTO; ROBERT G. PAUL; and KAREN M. ROGGE,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Herbert Silverberg ("Plaintiff"), by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by KEMET Corporation ("KEMET" or the "Company") and other related parties and non-parties with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by KEMET and other related non-parties; (c) review of news articles, shareholder communications, and postings on KEMET's website concerning the Company's public statements; and (d) review of other publicly available information concerning KEMET and Defendants (defined below).

**NATURE OF THE ACTION**

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of KEMET against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of KEMET.

2.      On November 11, 2019, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Yageo Corporation ("Yageo") and Sky Merger Sub Inc. ("Merger Sub").  The transaction referred to in the Merger Agreement (*i.e.* the merger of Merger Sub with and into KEMET, with KEMET being the surviving corporation) is referred to herein as the "Proposed Merger."

3.      Under the terms of the Merger Agreement, KEMET stockholders will receive $27.20 in cash, without interest, for each share of KEMET common stock they hold (the "Merger Consideration").

4.      The consummation of the Proposed Merger is subject to certain closing conditions, including the approval of the stockholders of KEMET.  The Company expects the Proposed Merger to close in the second half of 2020.

5.      On December 26, 2019, in order to convince KEMET's stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a preliminary proxy statement, which was filed with the SEC on Schedule 14A (the "Proxy Statement").  The Proxy Statement is materially incomplete and misleading, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.      While Defendants, in the Proxy Statement, tout the fairness of the Merger Consideration to the Company's stockholders, they have failed to disclose material information

that is necessary for KEMET's stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy Statement incomplete and misleading.

7.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9.

8.      Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to KEMET's stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business, is incorporated, in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue had an effect in this District; (ii) KEMET is incorporated in this District; (iii) each of the Individual

Defendants, and Company officers and/or directors, either resides in this District or has extensive contacts within this District; (iv) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (v) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (vi) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

12.    Plaintiff is, and at all relevant times has been, a KEMET stockholder.

13.    Defendant KEMET is a Delaware corporation with its principal executive offices located at One East Broward Boulevard, Fort Lauderdale, Florida 33301.  Shares of KEMET common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "KEM." KEMET was founded in 1919 and is incorporated in the state of Delaware.  KEMET manufactures and sells passive electronic components under the KEMET brand worldwide.  The company operates in three segments: Solid Capacitors; Film and Electrolytic; and Electro-Magnetic, Sensors, and Actuators.

14.    Defendant Frank G. Brandenberg ("Brandenberg") was Chairman of the Board of the Company at all times relevant hereto.

15.    Defendant Wilfried Backes ("Backes") is and has been a director of the Company at all times relevant hereto.

16.    Defendant Gurminder S. Bedi ("Bedi") is and has been a director of the Company at all times relevant hereto.

17.    Defendant Jacob Kotzubei ("Kotzubei") is and has been a director of the Company at all times relevant hereto.

18.    Defendant William M. Lowe, Jr. ("Lowe"), is and has been a director of the Company and its Chief Executive Officer ("CEO") at all times relevant hereto.

19.    Defendant E. Erwin Maddrey, II ("Maddrey"), is and has been a director of the Company at all times relevant hereto.

20.    Defendant Yasuko Matsumoto ("Matsumoto") is and has been a director of the Company at all times relevant hereto.

21.    Defendant Robert G. Paul ("Paul") is and has been a director of the Company at all times relevant hereto.

22.    Defendant Karen M. Rogge ("Rogge") is and has been a director of the Company at all times relevant hereto.

23.    The defendants named in ¶¶ 14-22 are collectively referred to herein as the "Individual Defendants" and, with KEMET, as "Defendants."

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the other stockholders of KEMET (the "Class"). Excluded from the Class are Defendants herein and any person or other entity related to or affiliated with any Defendant.

25.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of November 8, 2019, there were 58,093,171 shares of KEMET common stock outstanding. Those 58,093,171 shares are beneficially held by hundreds to thousands of individuals and entities scattered throughout the country and around the world. The actual number of public stockholders of KEMET can be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.      Whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

ii.      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.      Whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy Statement.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### The Company Announces the Proposed Merger

26.     After markets closed on November 11, 2019, Yageo and KEMET publicly

announced the Proposed Merger via a press release.  The press release stated, in pertinent part:

**Yageo to Acquire KEMET for US$27.20 Per Share in Cash**

*Strengthens Position as a Leading Global Manufacturer of Passive Electronic Components*

*Adds Global Operational Scale Across North America, Europe and Asia*

*Enhances Presence in Attractive, High-Growth Segments and Applications*

*Creates Best-in-Class Manufacturing and R&D Operations to Deliver Superior Service and Continued Innovation to Customers*

NEW TAIPEI CITY, Taiwan and FORT LAUDERDALE, Fla., Nov. 11, 2019 (GLOBE NEWSWIRE) -- Yageo Corporation (TAIEX: 2327) ("Yageo") and KEMET Corporation ("KEMET") (NYSE: KEM) today announced that they have entered into a definitive agreement under which Yageo will acquire all of the outstanding shares of KEMET's common stock for US$27.20 per share in an all-cash transaction valued at US $1.8 billion, including the assumption of net debt. The transaction has been approved by the Boards of Directors of both companies.

The purchase price represents a premium of 26% to KEMET's volume weighted average price ("VWAP") for the last 30 trading days and 37% to its VWAP for the last 90 trading days.

Established in 1919 and headquartered in Fort Lauderdale, Florida, KEMET is a leading global supplier of high-end electronic components with a global footprint that includes 23 manufacturing facilities and approximately 14,000 employees located in 22 countries in the Americas, Asia and Europe.  KEMET's main products include tantalum capacitors, ceramic capacitors, magnetic, sensors and actuators, and film and electrolytic capacitors.   KEMET's products serve a number of applications, such as advanced automotive electronics, industrial applications, aerospace, medical, as well as smartphones, cloud/networking equipment, wireless communications, alternative energy and 5G technology.  Holding more than 1,600 patents and trademarks worldwide, KEMET has established a leading position for its products via its advanced R&D and technical staff and design-in capabilities.

Together with KEMET, Yageo will be well positioned as a one-stop provider of passive electronic components, including a leading portfolio of polymer, tantalum, ceramic, film and electrolytic capacitors, chip resistors, circuit protection as well as magnetics, sensors and actuators, all addressing a full range of end market

segments.  The combined company will have an enhanced global footprint and be better able to partner with long-standing, blue chip customers worldwide through a combined 42 manufacturing plants and 14 dedicated R&D centers.

Pierre Chen, Chairman and Chief Executive Officer of Yageo, said, "KEMET has remarkable technology innovation capabilities and a proven track record of integrating cross-border acquisitions.  We have been following their success with great admiration and look forward to creating a new legacy for the combined company.  KEMET gives us the extraordinary opportunity to combine our strengths to achieve synergies in product and technology offerings as well as geographic coverage.  The integration will enhance our ability to serve customers in consumer electronics as well as in the high-end automotive, industrial, aerospace, telecom and medical sectors.  I look forward to partnering with KEMET's employees to drive future growth and deliver enhanced value for our shareholders and customers."

William M. Lowe, Jr., Chief Executive Officer of KEMET, said, "We are pleased to reach this agreement with Yageo, which will deliver the certainty of immediate cash to our shareholders at a premium.  After a thorough process, the KEMET Board of Directors determined that this transaction is in the best interests of KEMET shareholders, customers and employees, and is a testament to our team's dedication to providing our customers with the broadest selection of passive component technologies and superior service in the industry.  I am confident that the combination of these two companies will provide customers with an enhanced experience and our employees with greater opportunities worldwide and we look forward to completing this transaction and ensuring a seamless transition."

**Transaction Benefits**

 The combination of Yageo and KEMET will create an industry leader in the $28 to $32 billion passive components industry, with combined annual revenues of approximately US$3 billion1.  Yageo and KEMET each have a proven track record of completing major cross-border acquisitions and believe this transaction will generate greater value for customers and shareholders of both companies.

The acquisition of KEMET will:

- Expand Yageo's product portfolio and enhance Yageo's ability to serve as a one-stop product solution to customers serving a range of segments and mission-critical applications;

- Enhance Yageo's global footprint with additional operational scale across North America, Europe and Asia with an increased ability to penetrate attractive, high-growth segments and applications;

- Drive profitability with meaningful cost synergies and greater efficiencies by leveraging KEMET's structural transformation that resulted in increased and sustainable margins, as well as an enhanced durability of KEMET's revenue base;

- Enable Yageo to leverage KEMET's presence and success in Japan through the consolidation synergy of KEMET and TOKIN;

- Increase Yageo's presence providing advanced products to the automotive electronics, 5G networking and communications, robotics and automation and industrial segments, including power supply; and

- Scale KEMET's business in Greater China and ASEAN region through Yageo's regional presence and sales channels

**Financing, Timing and Approvals**

The transaction is not subject to a financing contingency. Yageo intends to fund the transaction with a combination of cash on hand and committed financing.

The transaction, which is expected to close in the second half of 2020, is subject to customary closing conditions and the receipt of required regulatory approvals.

Following close of the transaction, KEMET will become a wholly owned subsidiary of Yageo and KEMET's common stock will no longer be listed on any public market.

**Advisors**

Citi is serving as financial advisor to Yageo, and Simpson Thacher & Bartlett LLP and Tsar & Tsai Law Firm in Taiwan served as legal advisors. Goldman Sachs & Co. LLC is serving as financial advisor to KEMET and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor.

**Conference Call and Webcast**

KEMET will host a conference call and webcast tomorrow, November 12, 2019, at 8:00 a.m. EST to discuss the transaction and results for the second quarter ended September 30, 2019.

## The Preclusive Deal Provisions

27.    In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for KEMET.

28.    Specifically, in the Merger Agreement, Defendants agreed to: (i) a strict non-solicitation provision that prevents the Company from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) an information rights

provision that requires the Company to disclose the identity of any competing bidder and to furnish Yageo with any competing bid; (iii) a matching rights provision which gives Yageo four business days to match any unsolicited superior acquisition proposal the Board receives; and (iv) a provision that requires the Company to pay Yageo a termination fee of $63,750,000 if the Company, among other things, signs an alternative acquisition agreement.

29.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of KEMET.

30.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that KEMET's stockholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

**Interests of the Officers and Directors of KEMET**
**to Completing the Proposed Merger**

31.     As acknowledged by the Proxy Statement, "KEMET's directors and executive officers may have interests in the [Proposed] Merger that are different from, or in addition to," the interests of KEMET's stockholders, including enhanced severance payments and the conversion of restricted stock units, other than the time- or performance-based portion of a long-term incentive plan award into the right to receive the Merger Consideration.

32.     The following, taken from the Proxy Statement, shows the potential payouts to KEMET's officers and directors as a result of their exchange of shares of KEMET for the Merger Consideration:

**Golden Parachute Compensation**

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Total ($) |
|------|------|------|------|------|
| Mr. Lowe | 2,900,000 | 4,727,392 | 73,921 | 7,701,313 |
| Mr. Thompson | 1,955,000 | 2,815,714 | 56,533 | 4,827,247 |
| Mr. Meeks | 1,568,250 | 1,398,829 | 72,774 | 3,039,853 |
| Mr. Lollini | 1,159,200 | 788,601 | 35,479 | 1,983,280 |
| Mr. Vetralla | 1,023,360 | 717,376 | 35,621 | 1,776,357 |

**Interests of the Financial Advisor to the Proposed Merger**

33.     KEMET engaged Goldman Sachs & Co. LLC ("Goldman Sachs") to act as its financial advisor in connection with the Proposed Merger, including the delivery of a fairness opinion.  KEMET agreed to pay Goldman Sachs a transaction fee of approximately $22 million, which is entirely contingent upon consummation of the Proposed Merger.

34.     The Proxy Statement states, in part, that:

> During the two (2) year period ended November 11, 2019, the Investment Banking Division of Goldman Sachs has not been engaged by KEMET, Yageo or any of their respective affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation.  Goldman Sachs may also in the future provide investment banking services to KEMET, Yageo and their respective affiliates for which the Investment Banking Division of Goldman Sachs may receive compensation.

**FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

35.     Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any materially false and misleading statements or material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material Omissions Relating to Financial and Business Projections**

36.    The Proxy Statement discloses KEMET's projections of certain financial measures provided to Yageo and Goldman Sachs that are not defined by generally accepted accounting principles ("GAAP"), including Adjusted EBIT, Adjusted EBITDA, Adjusted EPS and Free Cash Flow.  However, in the Proxy Statement, Defendants failed to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP metrics.

37.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has therefore heightened its scrutiny of the use of such projections.

38.    The Proxy Statement also discloses that on November 2, 2019, KEMET's management provided the Board with updated financial projections "to reflect the estimates of future tax payments and loss carryovers, the *In re Capacitors* litigation settlement, and the softer outlook for the remainder of fiscal year 2020," but fails to quantify the "softer outlook" or the amount of the proposed settlement of the *Capacitors* litigation.

**Material Omissions Relating to Goldman Sachs' Analyses and Fairness Opinion**

**Implied Premia and Multiple Analysis**

39.    With respect to Goldman Sachs' *Discounted Cash Flow Analysis* of KEMET, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values used for KEMET; and (ii) the amount of fully diluted outstanding shares of KEMET utilized.

**Implied Premia and Multiple Analysis**

40.    With respect to Goldman Sachs' *Implied Premia and Multiple Analysis* of KEMET, the Proxy Statement fails to disclose: (i) estimates of unlevered free cash flow for KEMET for fiscal years 2020 through 2027, and the methodology and inputs used to calculate free cash flow; (ii) the range of illustrative terminal values utilized for KEMET, and the methodology and inputs used to calculate illustrative terminal values; (iii) the specific inputs and assumptions used to

determine the discount rate range from 11.0% to 13.0%; and (iv) the number of fully diluted outstanding shares of KEMET, as provided by KEMET's management, as of the time of Goldman Sachs' analysis.

**Discounted Cash Flow Analysis**

41.     With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis* of KEMET, the Proxy Statement fails to disclose: (i) the specific inputs and assumptions used to determine the discount rate of 12.1%; (ii) the projected net debt utilized for fiscal years 2020 through 2022; and (iii) the number of fully diluted outstanding shares of KEMET, as provided by KEMET's management, as of the time of Goldman Sachs' analysis.

**Material Omissions Relating to the Goldman Sachs' Conflicts**

42.     With respect to Goldman Sachs, the Proxy Statement limits its disclosure of fees to those received by "the Investment Banking Division of Goldman Sachs."

43.     Full disclosure of investment banker compensation and any other potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

**Material Omissions Relating to The Process Leading up to the Proposed Transaction**

44.     The Proxy Statement discloses a history of negotiations, and explains that in connection with due diligence, the Company entered into confidentiality and standstill agreements with entities referred to as "Party A" and "Party B." Those agreements contain "customary 'standstill' provisions." However, there is no specification as to the previously executed confidentiality and standstill agreements contain don't-ask-don't-waive ("DADW") standstill provisions that are currently precluding Party A or Party B from making a topping bid for the Company.

45.     The Proxy Statement provides that "the Board unanimously (with the exception of one (1) director, who had a scheduling conflict but had otherwise stated his support for the Merger) recommends that you vote 'FOR' the proposal to adopt the Merger Agreement."  The Proxy Statement does not identify which director is excepted from the recommendation.

* * *

46.     The omission of the foregoing information renders the "Background of the Merger," "Recommendation of the Board and Reasons for the Merger," "Opinion of KEMET's Financial Advisor," and "Projections Prepared by KEMET's Management" sections of the Proxy Statement materially incomplete in contravention of the Exchange Act.

## COUNT I

### AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false

14

or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50.     Defendants have issued the Proxy Statement with the intention of soliciting stockholders support for the Proposed Merger.  Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the background of the transaction, financial projections for the Company and the fairness opinion and conflicts of Goldman Sachs.

51.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

52.     Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.  Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

53.     Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement

and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

55.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

56.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT

57.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.    The Individual Defendants acted as controlling persons of KEMET within the meaning of Section 20(a) as alleged herein.  By virtue of their positions as officers and/or directors of KEMET, and participation in and/or awareness of the Company's operations and/or intimate

knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

61.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a).

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their as alleged herein.  By virtue of their positions as controlling persons, these Defendants are

liable pursuant to Section 20(a).  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

64.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as class counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 10, 2020

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*

**OF COUNSEL:**

**ABRAHAM, FRUCHTER &
TWERSKY, LLP**
Jeffrey S. Abraham
Michael J. Klein
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: jabraham@aflaw.com
Email: mklein@aflaw.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*